IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 7, 2006

## EDWARD COLEMAN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-28251    Arthur T. Bennett, Judge**

-----

**No. W2005-01335-CCA-R3-PC  - Filed April 6, 2006**

-----

The petitioner, Edward Coleman, was convicted of first degree premeditated murder, and he received a sentence of life imprisonment.  Thereafter, he filed a petition for post-conviction relief, alleging that his trial counsel was ineffective.  The post-conviction court denied the petition, and the petitioner appeals.  Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Edward Coleman.

Paul G. Summers, Attorney General and Reporter, Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The petitioner was originally indicted on charges of first degree premeditated murder, first degree felony murder, especially aggravated kidnapping, and aggravated kidnapping.  At trial, the proof revealed that in 1998, the petitioner and the victim had been in an automobile accident, in which the petitioner lost one of his legs.  Following the accident, Sid Rhodes heard the petitioner

threaten to kill the victim. Additionally, Ocassieo Johnson heard the petitioner and his co-defendant, Sean Williams, threaten harm to the victim because of the accident.[1]

Subsequently, on January 11, 1999, the petitioner, Williams, Rhodes, and Mario Means were riding around in a Nissan Altima which had previously been stolen by Johnson. The petitioner had a gun with him. Williams told Rhodes, "We fixin' to kill him [the victim]." State v. Edward Coleman, No. W2001-01021-CCA-R3-CD, 2002 WL 31625009, at *1 (Tenn. Crim. App. at Jackson, Nov. 7, 2002). The men stopped at the victim's house, and Williams sent Rhodes into the residence for the victim. While Rhodes was gone, Williams asked the petitioner if everyone knew that they were "fixin' to kill him." Id. at *2. Then, Williams and the petitioner laughed.

After the victim got into the car, the men resumed driving. Williams drove the car into a ditch and told the other men to get out of the car. When all of the men were outside of the car, the petitioner fired three shots at the victim. The victim fell. Williams took the gun from the petitioner and shot the victim again. Williams instructed Rhodes and Means to also shoot the victim, or Williams would kill them. Rhodes and Means shot the ground beside the victim. Because the victim was still alive, Williams fired a final shot into the victim's head. The petitioner instructed Williams to hide the body in the bushes. Johnson testified that the day after the offense, the petitioner called him and told him that he had shot the victim the previous day.

After the foregoing proof, the jury convicted the petitioner of all of the charged offenses. On appeal, this court affirmed the petitioner's first degree premeditated murder conviction, but reversed his felony murder conviction and his kidnapping convictions due to insufficient evidence. Subsequently, the petitioner, acting pro se, filed a petition for post-conviction relief and an amended petition, alleging that his trial counsel was ineffective. In the petitions, the petitioner claimed that counsel was ineffective by failing to pursue an alibi defense; failing to sufficiently cross-examine or seek to exclude the testimony of Rhodes, Means, and Johnson; failing to request that the jury determine whether Johnson was an accomplice; failing to object to the definition of intentional; and failing to request that the jury be given an accomplice instruction relating to Means and Rhodes.

At the post-conviction hearing, the petitioner testified that he was a juvenile at the time of the offense, but he was transferred from juvenile court. The petitioner explained that trial counsel began representing him after the transfer. He stated that he was visited "plenty" of times by counsel prior to trial, and counsel shared with him copies of discovery materials. Additionally, counsel reviewed the State's proof with him. The petitioner told counsel that he did not have anything to do with the victim's murder.

The petitioner said that counsel never discussed plea offers with him. He said, "Basically they could have broke it down it probably would have. I probably would have took it [a plea bargain]. Anything is better than life." However, the petitioner repeatedly stated that he was innocent of the crimes; therefore, he had no interest in pleading guilty. Additionally, the petitioner

---

[1] Ocassieo Johnson is also referred to as "Casio" in the record.

acknowledged that after trial he learned that the District Attorney's Office "has a no deal policy on first degree murder cases."

The petitioner asked trial counsel to call his former girlfriend, June Glover, and her mother, Charlotte Glover, as alibi witnesses. The petitioner knew that the Glovers were interviewed by an investigator hired by trial counsel. However, the Glovers were not called at trial nor was an alibi defense utilized at trial.

The petitioner complained that the jury was not instructed that Rhodes, Means, or Johnson were accomplices to the murder of the victim. The petitioner believed that the men should have been considered accomplices, and, because their testimony was uncorroborated, he never should have been convicted. He asserted that counsel did not adequately cross-examine the witnesses. However, the petitioner admitted that counsel vigorously cross-examined the witnesses as to whether they had any agreements with the State in exchange for their testimony.

The petitioner stated that he was convicted of all the charged offenses. Trial counsel appealed the convictions. The Court of Criminal Appeals affirmed the petitioner's first degree murder conviction but reversed the felony murder and kidnapping convictions due to insufficient evidence. The petitioner maintained that on appeal, counsel should have argued that Rhodes, Means, and Johnson were accomplices whose testimony was uncorroborated. Further, the petitioner argued that counsel should have raised the issue that the jury instructions were "given in disjunction form." The petitioner also complained that the jury was given the wrong definition of "knowing."

The petitioner's trial counsel testified that she was appointed to represent the petitioner after the juvenile transfer hearing. She did not specifically recall whether she had reviewed the juvenile hearing transcript. However, counsel filed a motion for the production of the juvenile transfer hearing transcript.

Counsel spoke with the petitioner several times in preparation for the case. The petitioner wanted to pursue an alibi defense. The petitioner told counsel that he spent the afternoon and night of the murder with June Glover at her home. Counsel hired an investigator who spoke with June Glover, Charlotte Glover, and June's grandmother.[2] Counsel also spoke with the Glovers. Counsel recalled that initially June Glover was considered to be an alibi witness. However, counsel had reservations about the credibility of her testimony. After counsel subpoenaed June Glover for trial, June stated that she no longer wanted to testify on the petitioner's behalf. Counsel believed that June was "backtracking" on her story. Counsel feared that June would not testify regarding the petitioner's alibi or that she would give false testimony. Therefore, counsel made a strategic decision to not call June Glover as a witness.

---

[2] Some of the individuals in this case share a surname. Therefore, for clarity, we have chosen to utilize their first names. We mean no disrespect to these individuals.

Counsel stated that during the interviews with Charlotte Glover, she learned that Charlotte was not with the petitioner at the time the murder occurred. Therefore, counsel determined that Charlotte could not be an alibi witness for the petitioner. Accordingly, counsel did not call Charlotte Glover as a witness at trial. Counsel noted that Johnson testified at trial that the petitioner had called him and confessed to the murder. Counsel believed that Johnson's testimony further called the alibi defense into question.

Counsel explained that at trial she did not present an alternative defense, choosing instead to attack the State's case through rigorous cross-examination. Counsel believed that Rhodes and Means were as culpable in the offense as the petitioner and that they should have been charged with the same crimes as the petitioner. During cross-examination, counsel called to the jury's attention that Rhodes and Means could potentially gain favorable treatment from the State by their testimony, despite their testimony that they had received no "deals." Further, counsel's questions emphasized that the stories related by Rhodes were not consistent with the stories related by Means. Additionally, counsel told the jury that each successive story related by Rhodes and Means was inconsistent with prior stories. Finally, counsel emphasized the inconsistencies between the accounts given by Rhodes and Means and the physical evidence. At the post-conviction hearing, counsel noted that the witnesses were also cross-examined by Williams' counsel. Trial counsel opined that the jury's verdict indicated that Rhodes and Means were believable witnesses.

Trial counsel testified that prior to trial she moved to have the petitioner's trial severed from that of Williams. That motion was denied. Trial counsel recalled that the trial had been originally set to begin in February 2001. Just before trial was to begin, new prosecutors disclosed more than eighty pages of additional discovery material. Counsel requested a continuance to review the newly disclosed material, and the trial court postponed the trial for thirty days. She stated that within the new materials was a half-page oral statement by Williams to police. The statement was previously unknown by the defense; however, there was no new information contained in the statement. She opined that thirty days was more than sufficient time for her to review the new materials, especially since the materials did not contain any information she did not already know from another source. Counsel stated that the newly discovered materials did not contain any new information which would strengthen her motion to sever.

Counsel acknowledged that she failed to preserve the entire record on appeal, attributing the error to "oversight." She did not recall failing to cite to authority in relation to the issue that Rhodes and Means had given perjured and conflicting testimony.

The post-conviction court denied the petition for post-conviction relief, finding that the petitioner had failed to carry his burden of establishing ineffectiveness of counsel by clear and convincing evidence. On appeal, the petitioner questions the court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, if a petitioner makes an insufficient showing of either prong, we need not address both. Goad, 938 S.W.2d at 370.

On appeal, the petitioner argues that trial counsel was ineffective in failing to present the Glovers as alibi witnesses at trial or in failing to "present any other viable defense." Additionally, the petitioner asserts that counsel was ineffective in failing to relitigate the severance motion after receiving new discovery materials in February 2001. The petitioner complains that counsel did not review a transcript of his juvenile transfer hearing. Finally, the petitioner states that counsel was ineffective in failing to provide a complete record for review on direct appeal regarding the issue of the State's delayed disclosure of Williams' statement and in failing to cite authority for one of the appellate issues. The petitioner has apparently abandoned all other issues that he raised in the lower court.

Initially, we note that none of the issues above, except for the issue of alibi witnesses, were raised in the petitioner's original or amended petitions for post-conviction relief. As such, they are arguably waived. Generally, we will not address issues raised for the first time on appeal. State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996); State v. Turner, 919 S.W.2d 346, 356-57

(Tenn. Crim. App. 1995). Regardless, the petitioner is not entitled to relief. By its ruling, the post-conviction court implicitly accredited the testimony of trial counsel. At the post-conviction hearing, counsel testified that she did not pursue a renewed motion for severance after receiving new discovery materials because the documents did not contain any new information. Further, the petitioner does not assert how he was prejudiced by counsel's alleged failure to review the transcript of his juvenile transfer hearing. Moreover, we note that despite counsel's failure to include the necessary materials or citations for certain issues on appeal, this court nevertheless ruled upon the merits of the issues. See Coleman, No. W2001-01021-CCA-R3-CD, 2002 WL 31625009, at **9 and 11. Therefore, the petitioner was not prejudiced by any alleged deficiency.

The petitioner's next complaint of ineffectiveness concerns counsel's failure to call the Glovers as alibi witnesses. We note that the petitioner did not produce the Glovers to testify at his post-conviction hearing. This court has previously cautioned, "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit the witnesses might have offered to the petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Accordingly, the petitioner has failed to demonstrate prejudice in this regard. Additionally, the post-conviction court found that trial counsel made a strategic decision not to call the witnesses based upon her opinion that they would be either unhelpful or untruthful. Likewise, we can find no reason to second-guess the legitimate strategic decision of counsel.

Finally, the petitioner's complaint that counsel erred in failing to pursue another "viable defense" is unfounded. The petitioner does not specify what other defense counsel should have pursued. Regardless, counsel testified that she defended the petitioner by challenging the credibility of the State's witnesses and their motives for testifying. Accordingly, we conclude that the petitioner has failed to meet his burden of establishing by clear and convincing evidence that trial counsel was ineffective.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE